JUDGE CARTER

**13 CIV 4635**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

B.K.,

                 Plaintiff,

      - against -

LAW SCHOOL ADMISSION COUNCIL, INC.,

                 Defendant.

ECF Case

COMPLAINT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

RECEIVED
JUL - 3 2013
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff B.K. ("plaintiff"), through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendant Law School Admission Council, Inc. ("LSAC" or "defendant") as follows:

NATURE OF ACTION

       1.    Plaintiff suffers from Attention Deficit/Hyperactivity Disorder ("ADHD") and Generalized Anxiety Disorder ("GAD"). For much of his life, these impairments have limited plaintiff's major life activities, including his learning, reading, and processing written material. Plaintiff most recently received a neuropsychological evaluation in July 2011. The evaluator, a clinical psychologist, found that both ADHD and GAD were causing significant impairment. The clinical psychologist conducted numerous tests, including exams the LSAC requires when test takers seek accommodations based on cognitive impairments. The tests showed that plaintiff's reading rate was in the fourth percentile and that 90 percent of individuals plaintiff's age scored better than him on the processing speed index.

       2.    As a result of his cognitive impairments, plaintiff has received academic accommodations since second grade and currently receives accommodations, including 100

530622 v4

percent extra testing time (double-time), at New York University ("NYU") where he attends college. These academic accommodations have provided plaintiff an opportunity to compete on a level playing field with individuals who do not have disabilities.

3.       Plaintiff intends to apply to and attend a law school approved by the American Bar Association ("ABA"). Plaintiff must take the Law School Admission Test (the "LSAT") to be admitted to an ABA-approved law school. Defendant LSAC prepares and administers the LSAT. Due to his disabilities, plaintiff has requested double-time, five minute breaks between sections, and a separate room for the exam. Numerous clinicians, including medical doctors, psychiatrists, licensed professional counselors, and clinical psychologists, have submitted recommendations supporting plaintiff's request for accommodations.

4.       The LSAC acknowledges that plaintiff is an individual with a disability under the law and entitled to reasonable testing accommodations for the LSAT. The LSAC has not argued that the accommodations plaintiff requests are unreasonable, will present an undue hardship, or fundamentally alter its examination. In fact, the LSAC has granted other individuals these types of accommodations, including double-time, in prior administrations of the LSAT. On information and belief, some of the individuals for whom the LSAC has granted double extended time never received that accommodation before taking the LSAT. In contrast, plaintiff has received academic accommodations since the second grade and currently receives such accommodations, including 100 percent extra testing time, at NYU.

5.       The LSAC, however, refuses to grant plaintiff his requested accommodations. Substituting its unfounded judgment for that of qualified clinicians who have personally evaluated plaintiff, the LSAC unlawfully has refused to grant him double time or five minute breaks between each section. Rather, the LSAC has offered plaintiff 10 minutes of

additional time per section. The LSAC completely disregards the observations, diagnosis, and recommendations of plaintiff's qualified clinicians and the extensive documentation demonstrating his disabilities and confirming his long history of receiving similar testing accommodations. Immediate and permanent injunctive relief is necessary to ensure that plaintiff is no longer excluded from, deterred from or otherwise discriminated against in taking the LSAT.

6.      Plaintiff brings this action to remedy disability discrimination based on defendant's denial of reasonable testing accommodations for the LSAT, in violation of Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA"); the New York State Human Rights Law, Executive Law § 290 et seq. (the "Executive Law"); and the Administrative Code of the City of New York § 8-107 et seq. (the "City Law").

7.      Plaintiff seeks injunctive and declaratory relief and other appropriate equitable relief pursuant to the ADA, the Executive Law, and the City Law.

<u>PARTIES</u>

8.      "B.K." is not plaintiff's real name.  It is a pseudonym used to protect plaintiff from having to publically disclose his personal and confidential medical information and risk stigmatization due to his disabilities and permanent damage to his job prospects and professional reputation.  By allowing plaintiff to proceed anonymously, defendant is not prejudiced.  Defendant knows plaintiff's identity based on a number it has assigned to him, L32024599.

9.      Plaintiff, a resident of New York City, is 23 years old.  Plaintiff attends NYU and anticipates satisfying his graduation requirements in July 2013.  He expects to receive a Bachelor of Arts in Politics.  But for the LSAC's discrimination, plaintiff would otherwise be eligible for law school by the fall 2013.  Plaintiff is a person with a disability within the meaning

of the ADA, the Executive Law, and the City Law and entitled to reasonable accommodations on the LSAT.

10.     The LSAC is a Delaware non-profit corporation headquartered in Newtown, Pennsylvania.  The LSAC has over 200 member law schools, including all ABA-accredited law schools.  The LSAC provides a number of services to its member law schools and to individuals seeking admission to law school.  Among other services, the LSAC prepares and administers the LSAT, the examination required for admission to all ABA-accredited law schools.  Accordingly, the LSAC is a private entity that offers examinations related to applications to post secondary education, and therefore is subject to the non-discrimination and reasonable accommodation requirements of the ADA, the Executive Law, and the City Law.

<u>JURISDICTION AND VENUE</u>

11.     This Court has jurisdiction over plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 and 1343(a), because the ADA claims arise under the laws of the United States. In addition, this Court has jurisdiction pursuant to 28 U.S.C. § 12188, which incorporates the provisions of 42 U.S.C. § 2000a-3(a), providing for civil actions in this Court by any person subjected to discrimination on the basis of disability in violation of Title III of the ADA.

12.     This Court has jurisdiction to issue a Declaratory Judgment pursuant to 28 U.S.C. § 2201(a) and further relief pursuant to 28 U.S.C. § 2202.

13.     This Court has supplemental jurisdiction over plaintiff's Executive Law and City Law claims pursuant to 28 U.S.C. § 1367.

14.     Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint, plaintiff served a copy of this Complaint on the City of New York Commission on Human Rights and the Corporation Counsel of the City of New York.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the unlawful discrimination took place here.  In addition, the LSAC is doing business in this District by administering the LSAT here.

FACTUAL ALLEGATIONS

Background

16.     Law school applicants must take the LSAT as a prerequisite to admission to all ABA-approved law schools.  The LSAC reports LSAT scores to the law schools to which students apply for admission.

17.     Plaintiff is a senior at NYU who plans to attend an ABA-approved law school.  He expects to satisfy his NYU graduation requirements by July 2013 and would be eligible to begin law school by the fall 2013, but for defendant's unlawful discrimination. Plaintiff has not applied to law school because the LSAC refuses to grant his request for reasonable accommodations on the LSAT.  Plaintiff is currently registered to take the October 5, 2013 LSAT administration, but defendant continues to deny his request for reasonable accommodations.

Plaintiff's History of Disability, Remediation, and Accommodations

18.     Plaintiff suffers from cognitive impairments, including ADHD and anxiety.  ADHD and anxiety have substantially affected plaintiff for almost his entire life.  These conditions affect the way he processes information, concentrates, and reads.

A.     Plaintiff Suffers from Attention Deficit Disorder and Anxiety

19.     Plaintiff's cognitive impairments were observed at an early age. During preschool, plaintiff's parents sought psychoeducational testing for plaintiff to determine

appropriate school placement based on his teacher's concerns that he was highly distractible and very active in the classroom.

20.     Plaintiff was initially evaluated in 1995, by Robert B. Hampson, Ph.D., before he turned five years old.  Dr. Hampson observed distractibility and impatience throughout the assessment and concluded that plaintiff's learning profile demonstrated "inconsistencies that may well signal some learning problems in the long run, or they may be more developmental." He found that potential areas of difficulty included "language processing, visual spatial and symbol processing skills, and attention and concentration."   Dr. Hampson recommended that plaintiff enroll in a specialized school environment and that his parents monitor his attention and concentration skills carefully.  Dr. Hampson expressed concern that plaintiff may suffer from Attention Deficit Disorder ("ADD").  Dr. Hampson further believed that plaintiff was a highly anxious child.

21.     Dr. Hampson and others referred plaintiff to the Shelton Evaluation Center.  The Shelton Evaluation Center is a division of the Shelton School located in Dallas, which serves children with learning differences.  The Shelton Evaluation Center sees children with the following suspected learning disabilities and related disorders: Dyslexia (Written Language Disorder), ADHD (Inattentive, Hyperactive, or Combined Type), Fine Motor Impairment (Handwriting), Communication or Oral Language Disorder, Anxiety and Mood Disorders, Nonverbal Learning Disability, Autism Spectrum Disorder, and preschool children at-risk for learning disorders.

22.     Based in part on his Shelton evaluation and prior testing, plaintiff was admitted to the Shelton School's Early Childhood program.  Plaintiff attended Shelton between 1995 and 1997.  During this time, plaintiff's teachers at Shelton observed that plaintiff exhibited

symptoms of ADD.   Plaintiff's teachers reported "attention[] difficulties," including "distractible," "disorganized," "forgetful," and "no attention to detail."

23.    In October 1995, plaintiff underwent a neuropsychological assessment by David B. Sperry, M.D.   Dr. Sperry noted that "[o]bservations from Shelton teachers indicates that [plaintiff] does have ADD."   Dr. Sperry further observed that plaintiff had "chronic problems in public," "[h]e can get out of control," and "[h]e cannot remember serial directions." Dr. Sperry tried a treatment of Ritalin for the ADD, but stopped it because of side-effects.   In December 1995, plaintiff met with Dr. Sperry again.   Dr. Sperry observed that following the trial of Ritalin, plaintiff exhibited clinically significant anxiety.

24.    In addition to Ritalin, plaintiff also received a trial of Aderall to treat his attention disorder in or around 1997.

25.    In 1997, plaintiff was reevaluated by Warren A. Weinberg, M.D., at Children's Medical Center in Dallas.   Dr. Weinberg found that plaintiff suffered from an affective disorder, probable dysgraphia (but too young to determine),[1] and a notable level of vigilance.   Dr. Weinberg did not proscribe medication at the time, but recommended behavioral interventions to help plaintiff regulate hyperactivity, focus in school, and reduce anxiety. Following Dr. Weinberg's recommendation, plaintiff received treatment from Lynda Newman, Ph.D., for educational and behavioral concerns.   Plaintiff saw Dr. Newman for more than one year.

---

[1]    Dysgraphia is a learning disability that affects writing, which requires a complex set of motor and information processing skills. Dysgraphia can lead to problems with spelling, poor handwriting, and putting thoughts on paper. The condition can result partly from visual-spatial difficulties, that is trouble processing what the eye sees; or language processing difficulty, meaning trouble processing and making sense of what the ear hears.

B.   Plaintiff Receives Academic Accommodations Beginning in Elementary School

26.   As a result of his ADD and anxiety, plaintiff has a long history of receiving academic accommodations.

27.   Plaintiff has received extended time for taking tests and other assignments since elementary school on a formal and informal basis. After leaving the Shelton School, plaintiff attended elementary, middle, and high school within the Highland Park Independent School District ("HPISD") between 1997 and 2009. Plaintiff enrolled in the HPISD as a second grade student.

28.   In October 1997, shortly after starting second grade in the HPISD, plaintiff's teacher referred him to special education services. Plaintiff's teacher reported that plaintiff had "poor attention and concentration," "difficulty staying on task and following directions," and that "he needs a great deal of individual attention." A diagnostician then evaluated plaintiff and administered multiple tests to determine if plaintiff qualified for special education services.

29.   Based on plaintiff's test results, teacher recommendation, and his history, the HPISD Admission, Review and Dismissal Committee (the "ARD Committee") classified plaintiff for special education services for behavior issues and speech therapy. The ARD created and implemented an Individualized Education Program ("IEP") and a Behavior Intervention Plan ("BIP"). Throughout elementary school, the ARD Committee reviewed on an annual basis its decision to provide plaintiff special education services and other academic accommodations and updated the IEPs and BIPs. Although the HPISD ended plaintiff's speech therapy around the time he started third grade, due to behavior issues and the negative effect they had on his academics, plaintiff continued to receive accommodations.

30.     As a student who received special education services, plaintiff benefited from a variety of academic support programs for designated special needs students as well as formal and informal accommodations on assignments and examinations.

31.     Plaintiff was enrolled in the "Jump Start" program for students with special needs. Plaintiff took all academic evaluations in the school resource room. For some period of time, he attended the resource room on a daily basis for extra help with his school work. Pursuant to the IEPs, among other accommodations, the school provided plaintiff additional time to complete assignments and tests, administered his tests in small groups, and divided his school work into manageable segments.

32.     Following elementary school, plaintiff's learning difficulties affected his studies. In many areas, he was impaired because of his slow reading rate. Plaintiff asked for breaks during class to regain his concentration, complained that he had difficulty sitting still and focusing for the entire 50-minute class period, and frequently was distracted in class.

33.     In middle school and high school, plaintiff qualified as a student with disabilities for special education purposes and as eligible for an official accommodations plan. Between fifth grade and the first semester of 10th grade, however, plaintiff refused to ask for accommodations to avoid social stigma, which is common for students to do. During this period, plaintiff continued to experience difficulty completing tests and assignments and he often received low grades.

34.     During the second semester of his sophomore year in high school, plaintiff sought informal accommodations. For his remaining time at high school, plaintiff received double extended time on in-class assignments and in-class examinations and the ability to take his exams in a quiet proctored environment in the school's counseling center. As a result of

these accommodations, plaintiff's grades noticeably improved from those he received at the beginning of high school.  Plaintiff graduated from high school in the spring 2009.

C.   Plaintiff Continues to Receive Testing Accommodations During College

35.   In 2009, before starting college, plaintiff was reevaluated by Michael J. Chiu, M.D., F.A.C.P., who found continued symptoms of ADHD.

36.   Between 2009 and 2011, plaintiff attended the Ecole Hoteliere Lausanne ("EHL"), a four-year school in Switzerland, where he studied hotel administration.

37.   Switzerland has no law that is equivalent to the ADA.  EHL offers academic accommodations only to those students suffering from dyslexia, ADD or ADHD, and and/or physical impairments.  EHL does not extend accommodations to students suffering from psychiatric disorders including anxiety disorders.   EHL requires students to provide documentation establishing their dyslexia, ADD or ADHD, and/or physical impairment to receive testing accommodations.  All students receiving accommodations at EHL receive 25 percent additional testing time (plus use of a computer to type their responses and a separate testing room) regardless of the nature or severity of the impairment.  EHL does not offer individualized accommodation plans like those offered by schools in the United States.

38.   Plaintiff requested accommodations at EHL.  In support of his request, plaintiff submitted medical documentation from doctors and other clinicians he had seen in the United States.  In addition, in Switzerland, EHL required plaintiff to see Gianni Minghelli, M.D., an independent doctor who provided consultation services to EHL, to verify the need for plaintiff to receive testing accommodations.  After reviewing plaintiff's documents and conducting an evaluation, Dr. Minghelli confirmed that "from a medical point of view, it is justified that [plaintiff] can benefit from additional time for written tests."

39.    Accordingly, during his time at EHL, plaintiff received the standard accommodations, 25 percent additional time and a separate testing room for exams. This determination was based solely on plaintiff's ADHD diagnosis and did not consider the existence and effects of plaintiff's anxiety disorder in providing him with test accommodations.

40.    The testing accommodations plaintiff received at EHL (25 percent extra time and a separate testing room for exams) were helpful compared to having no accommodations at all. However, they were inadequate given the severity of his ADHD and his anxiety disorder.

41.    As set forth above, as early as 1995, doctors observed that plaintiff suffered from severe anxiety. While in Switzerland, plaintiff regularly met with Alexander Poleski, M.D., a psychiatrist, for cognitive behavioral therapy. Around this same time, plaintiff also began seeing Lama Baghdadi, M.D., an internist, on a regular basis. Both Dr. Poleski and Dr. Baghdadi formally diagnosed plaintiff with an anxiety disorder, GAD, and proscribed plaintiff medication. Thereafter, when plaintiff returned to the United States in or around 2011, plaintiff continued to receive treatment for his anxiety condition. Laura L. Fisher, M.D., F.A.C.P., reevaluated plaintiff and reached the same conclusion that plaintiff suffered from GAD. Dr. Fisher continued proscribing plaintiff medication for his condition.

42.    In February 2011, plaintiff was evaluated by Marie Pretti ("Pretti"), a neuropsychologist. In Switzerland, neuropsychologists are not licensed. Pretti examined plaintiff for two hours and found that he exhibited symptoms consistent with ADHD. Across measures assessing working memory and attention, Pretti found that plaintiff "shows normal reaction times but too many mistakes." She concluded that plaintiff had attention and executive

function deficits and recommended that he receive additional time to complete his college exams.

D.     Dr. Weiner's Evaluation

43.     On July 14 and 15, 2011, plaintiff underwent an updated neuropsychological evaluation conducted by Staci Weiner, Psy. D.  Dr. Weiner is a licensed clinical psychologist and certified school psychologist.  Her specialty areas include assessment and treatment of, among other areas, anxiety disorders, depression, ADD, and learning disabilities.  Dr. Weiner conducted numerous cognitive assessments and found that plaintiff's scores were widely disparate based in large part on difficulty with timed tasks:

a.     Dr. Weiner administered the Wechsler Adult Intelligence Scale – Fourth Edition ("WAIS-IV"), a test of cognitive ability that includes 10 subtests in four areas, including the Processing Speed scale.  The Processing Speed scale is a measure of the individual's ability to quickly and correctly scan, sequence, or discriminate simple visual information.  Dr. Weiner found that plaintiff's scores in the other three areas "were all significantly higher than his Processing Speed."  On the Processing Speed index, plaintiff scored in the tenth percentile, meaning that 90% of individuals his age scored better.  Dr. Weiner noted that this finding is "consistent with previous evaluations, which indicated difficulty with timed tests."

b.     Dr. Weiner also administered the Woodcock Johnson Test of Achievement – Third Edition ("WJ-III"), to test plaintiff's academic achievement.  On the reading fluency subtest of the WJ-III, plaintiff scored within the "Below Average" range.  Dr. Weiner observed that although plaintiff was able to answer the questions accurately, he "lost points because of his slow rate of responding."  Likewise, on the math fluency subtest, which is

also timed, plaintiff scored within the "Below Average" range. Dr. Weiner observed, "Similar to other tasks, [plaintiff] was able to correctly answer the[] more basic math problems, but his score was impaired by a slow rate of response. On a different subtest of the WJ-III, Dr. Weiner noted that where there were no time limits on the task, plaintiff "took a very long time to answer each question."

        c.      Also on the WJ-III, Dr. Weiner found that plaintiff performed within the "Below Average" and "Low" ranges for the Story Recall, Story Recall – Delayed, and Understanding Directions subtests. These subtests require sustained attention and executive functioning skills requiring test takers to listen, remember, and perform required tasks. Dr. Weiner concluded that "[g]iven [plaintiff's] history of attentional problems, it is not surprising that this area was a weakness."

        d.      Plaintiff also completed the Nelson Denny Reading Test ("NDRT"), to further evaluate his reading achievement. The LSAC's Guidelines for Documentation of Cognitive Impairments state that the reading skills assessed and the format used by the NDRT "are most similar to the reading skills assessed and the format utilized on the LSAT" and, "therefore, the NDRT is the preferred measure." On the NDRT, plaintiff's reading rate was in the fourth percentile. Dr. Weiner further found that plaintiff's performance on this test "reaffirm[s] previous evaluations and self-reports, which indicate that [plaintiff] has significant difficulty with timed tests."

        e.      Overall, Dr. Weiner observed that plaintiff worked slowly and carefully, such that he often lost credit despite having the correct answer because he ran out of time. She noted that he lost focus, specifically during a long set of instructions or lengthy verbal questions, and asked for items to be repeated. She further observed that plaintiff displayed the

knowledge that was required of him when he had the time to process the information and complete the task.

44.     Based on her diagnostic testing, her observations, and plaintiff's history, Dr. Weiner concluded that plaintiff satisfied the diagnostic criteria for ADHD and GAD pursuant to the Diagnostic Statistical Manual – Fourth Edition (often referred to as the "DSM").  She found that both ADHD and GAD were causing significant impairment.   Dr. Weiner recommended that plaintiff continue receiving accommodations for his college exams, including extended time and a separate location to take the test.  She also made several recommendations for learning and organizational strategies.  She found that plaintiff has the potential to excel academically if given the chance and that the proper accommodations would provide plaintiff the opportunity to do so.

E.     Plaintiff's Accommodations at College Based in the United States

45.     In 2011, plaintiff returned to the United States.  Plaintiff transferred from EHL to NYU, a university based in the United States.  Plaintiff applied for accommodations from NYU.  To receive accommodations, NYU required plaintiff to demonstrate a substantial limitation to academic functioning based on recent and comprehensive psychoeducational and neuropsychological testing.  Plaintiff submitted, among other documentation, Dr. Weiner's July 2011 evaluation.  Applying the ADA, NYU granted plaintiff 50 percent additional time (time and a half) on his in-class exams and in-class assignments, a smaller proctored testing environment, use of a computer for exams, and permission to audio tape lectures.

46.     In or around June 2012, plaintiff met with Dr. Weiner again.  She conducted a clinical interview addressing all DSM criteria and gathered a thorough account of plaintiff's psychiatric, medical and educational history.  She also administered the Behavior

Assessment System for Children – 2nd Edition, which is designed to facilitate and support clinical diagnosis of psychiatric disabilities in children and young adults up to 25 years old. Based on the psychological testing results, both past and current, as well as sessions together in June 2012 and assessment results, Dr. Weiner confirmed plaintiff's GAD and ADHD diagnosis. In a report dated June 27, 2012, Dr. Weiner reaffirmed her previous conclusion that these disabilities "clearly and unequivocally impair[] [plaintiff's] ability to take examinations under regular testing conditions."

47.      Between 2011 and June 2012, plaintiff was unable to complete several in-class examinations even with the 50 percent additional time accommodation. As a result, in July 2012, plaintiff requested that NYU enhance his accommodations by increasing his time for in-class exams and in-class assignments from 50 percent to 100 percent extended time. Plaintiff submitted Dr. Weiner's June 2012 report in support of his request. NYU granted plaintiff's request based on the combined effects of plaintiff's ADHD and GAD. In addition to double extended time, NYU also continued to provide plaintiff the other accommodations he had previously received, including a smaller proctored testing environment, use of a computer for exams, and permission to audio tape lectures. He presently receives those accommodations at NYU.

48.      Since receiving double time, plaintiff's college grades have improved compared to the grades he received at EHL (when he received 25 percent more test time) and at NYU (when he received 50 percent additional time for tests). Plaintiff currently has a 3.588 grade point average out of 4.00 in his Politics major at NYU. Plaintiff took all of his Politics classes while receiving double-time for in-class exams and in-class assignments. During the

spring 2013 semester, plaintiff enrolled in an honors-level seminar for the first time because of his recent grades.

<u>The Law School Admission Test</u>

49.     The LSAT is a standardized test required for admission to all ABA-approved law schools, most Canadian law schools, and many non-ABA approved law schools. The LSAC administers the LSAT to approximately 150,000 people annually.

50.     The LSAT purportedly evaluates potential law school applicants on their reading comprehension, critical reasoning, and inferential reasoning.

51.     The LSAC states that the LSAT is the only common measure by which the ability of all prospective law students can be measured fairly.  Moreover, LSAC issues research reports available to law schools and the public which maintain that the LSAT is a better predictor of law school performance than undergraduate grade point average.

52.     The LSAT is comprised of six sections, including one reading comprehension section, two logical reasoning sections, one analytical reasoning section, one "experimental section" (which can be reading comprehension, analytical or logical reasoning), and one writing sample section.

53.     The reading comprehension section, logical reasoning sections, analytical reasoning section, and experimental section consist of between 23 and 27 multiple-choice questions.  The LSAC gives test takers 35 minutes to complete these sections.  Four of the five multiple choice sections are considered in determining the test taker's score; the experimental section is not scored.  The LSAC does not require individuals receiving extended time as an accommodation to complete the experimental section of the exam.

54.     The multiple choice questions fall into three categories of questions:

a.     Reading comprehension questions (one section):  This section contains four complex reading passages containing approximately 55 to 65 lines of text followed by five to eight questions about each passage.  The LSAC asserts that these questions measure a test taker's ability to read with understanding and insight.

b.     Analytical reasoning questions (one section):  This section, commonly referred to as "logic games," generally includes four short written passages followed by five to seven questions about each passage.

c.     Logical reasoning questions (two sections):  These questions require the test taker to read a short passage then answer one question about the passage.

55.     Test takers are given 35 minutes to complete the writing sample. The LSAC does not score the writing sample but provides copies to the law school where the test taker applies.

56.     The LSAC administers the LSAT four times per year, in February, June, September or October, and December.   The LSAC's website provides, "Many law schools require that the LSAT be taken by December for admission the following fall.  However, taking the test earlier – in June or September – is often advised."

57.     The LSAC prohibits test takers from taking the LSAT more than three times in a two year period.

<u>The LSAC's Denial of Plaintiff's Reasonable Request for Accommodations</u>

58.     Applicants with disabilities may seek testing accommodations on the LSAT pursuant to LSAC's policies and procedures.   The LSAC has available online an "Accommodations Request Packet."   An applicant must submit extensive documentation of

current and historical materials including medical and/or psychological documentation by a stated deadline.

59.     All tests for cognitive and psychological disabilities must be no older than three years if the applicant is under the age of 21, or no older than five years if the applicant is over 21.

60.     For the past two years, plaintiff has sought reasonable testing accommodations for the LSAT. Plaintiff has provided the LSAC with substantial medical documentation to support his requests and supplemented his application for accommodations each time the LSAC has asked for additional materials. The LSAC without explanation has disregarded the recommendations of plaintiff's qualified medical doctors, psychiatrists, licensed professional counselors, and clinical psychologists, including Dr. Weiner, the doctor who administered the tests that the LSAC required and who the LSAC required plaintiff to see. Moreover, the LSAC's justification for denying plaintiff's request for accommodations have been vague, inconsistent, and in several instances based on incorrect information contradicted by the materials plaintiff submitted for the LSAC to consider.

A.     Plaintiff's Initial Request for Accommodations on the LSAT

61.     In or around June 2011, plaintiff registered for the October 2011 administration of the LSAT. On June 2, 2011, plaintiff timely submitted a request for an accommodation. At the time, plaintiff requested 50 percent additional time and a separate testing room for the LSAT exam. Because of his experience living with ADHD and his anxiety disorder, plaintiff knew at the outset that he needed more than the standard time on the LSAT to have the same chance as non-disabled individuals to demonstrate his aptitude. When he made this initial request, however, plaintiff had never taken a practice LSAT exam nor did he have any

familiarity with the test. As described below, later on plaintiff modified his request by asking for 100 percent more time based on Dr. Weiner's assessment and recommendation and plaintiff's experience taking practice exams.

62.     In support of his initial request for an accommodation on the October 2011 LSAT administration, plaintiff provided extensive documentation. The documentation plaintiff submitted included a psychological evaluation and two neurological evaluations from 1995 in which plaintiff was diagnosed with ADD; a verification of approved accommodations for testing from EHL; and certification from three doctors from 2011 confirming the diagnosis of ADHD and the need for additional testing time on the LSAT. In addition, plaintiff's documentation included a neuropsychological evaluation by Pretti, dated February 2011, and a letter from Pretti recommending 33 percent additional time for the LSAT.

63.     By letter dated June 8, 2011, the LSAC asserted that it could not make a determination regarding plaintiff's application based on the materials he had submitted. The LSAC specifically requested a complete diagnostic report from a comprehensive up-to-date psychoeducational/neuropsychological assessment and test results from measures such as the WAIS-IV, NDRT, and WJ-III.

64.     As described in paragraphs 43-44, in July 2011, Dr. Weiner conducted a multiday examination of plaintiff, including administering the tests that the LSAC requires when a test taker seeks accommodations based on cognitive impairments.

65.     In July 2011, shortly after Dr. Weiner completed her evaluation, plaintiff submitted her report to the LSAC, which included all of the data that the LSAC had requested. By letter dated August 8, 2011, however, the LSAC informed plaintiff that it would not consider Dr. Weiner's report until it received a "full printout" of scores from certain exams. In addition,

the LSAC advised plaintiff it would not give any further consideration to his request for accommodations on the October 2011 exam because the applicable deadline for accommodation requests had passed.

66.     On August 9, 2011, plaintiff submitted the information that the LSAC had requested.  Among other materials, Dr. Weiner provided an Evaluator Form, recommending that plaintiff receive double-time and five minute breaks between each section for the LSAT.

67.     On August 10, 2011, the LSAC sent a letter to plaintiff informing him that the additional documentation was received after the August 5, 2011 deadline for accommodations and that the LSAC would not provide any accommodations for the October 2011 LSAT.

B.     LSAC Acknowledges Plaintiff's Disability, But Grants Him a Partial Accommodation

68.     Plaintiff did not take the LSAT in October 2011 given that the LSAC denied his request for reasonable accommodations.  Plaintiff registered to take the December 2011 administration of the LSAT.

69.     By letter dated September 2, 2011, the LSAC acknowledged that plaintiff was a person with a disability under the law and was entitled to accommodations for the LSAT. However, the LSAC only partially granted the accommodations that Dr. Weiner had recommended.  The LSAC advised plaintiff that he would receive 10 minutes extra per section (approximately 25 percent additional time) and a separate testing room.[2]

70.     The LSAC alleged that it offered plaintiff 10 minutes of extra time based on the recommendation of Pretti and the accommodations plaintiff received at EHL.  However,

---

[2]     The LSAC also purportedly offered plaintiff one 15 minute break between sections three and four of the exam.  However, this break is provided to all test takers and therefore does not constitute an accommodation for plaintiff's disabilities.

Pretti, who is not a doctor, had recommended more time (33 percent extra time). In making its determination, the LSAC also failed to acknowledge that plaintiff suffered from an anxiety disorder.

71.    That same day, September 2, 2011, plaintiff sent a letter to the LSAC requesting reconsideration of its determination because 10 minutes extra per section would not be sufficient. Plaintiff explained that there are significant differences between civil rights law in the United States and Switzerland and therefore it was improper to limit plaintiff's accommodations to those he received in college at EHL.

72.    In addition, in the September 2 letter, plaintiff explained that is was a mistake to rely on Pretti's recommendation and to disregard those of Dr. Weiner. As plaintiff pointed out, the LSAC had initially rejected Pretti's evaluation because it did not comply with the LSAC requirements for requesting an accommodation. The LSAC had specifically asked plaintiff to provide the data submitted by Dr. Weiner. Moreover, Dr. Weiner's evaluation was more recent and comprehensive and relied on the tests that the LSAC requires for test takers seeking accommodations.

73.    On September 29, 2011, the LSAC advised plaintiff that it would not offer additional accommodations. Plaintiff did not take the December 2011 exam because the LSAC denied the requested reasonable accommodations.

C.   25 Percent Additional Time Did Not Provide Plaintiff Equal Access to the LSAT

74.   Plaintiff registered for the June 2012 LSAT exam.  The LSAC offered plaintiff the same accommodations it had previously offered – 10 additional minutes for each section and a separate testing room.

75.   Plaintiff sat for the June 2012 LSAT exam.  Because of the time limitations, plaintiff's performance on the LSAT in June 2012 did not accurately reflect his aptitude or achievement level. Plaintiff was unable to answer a substantial number of questions in each of the four scored multiple-choice sections.  He resorted to guessing randomly on two of the sections (the logical reasoning and reading comprehension sections).  On another section (the analytical reasoning (or logic games) section), he managed to answer just a few questions and repeatedly selected the answer "D" to complete the test within the prescribed timeframe.

76.   Because he did not have sufficient time, plaintiff canceled his score.  Plaintiff's experience taking the test in June 2012 confirmed that 10 minutes of extra time per section is inadequate for him to have a fair opportunity to demonstrate his knowledge and abilities in the same manner as individuals without disabilities.

D.   The LSAC Continues to Refuse to Grant Plaintiff's Request for Accommodations

77.   Immediately following the June 2012 exam, plaintiff registered for the October 2012 LSAT exam. On or about June 27, 2012, plaintiff sent a letter to the LSAC from Dr. Weiner supporting the need for double-time.  Dr. Weiner stated:

> Because [plaintiff's] [GAD] and [ADHD] substantially limits him in many major aspects of his life and clearly and unequivocally impairs his ability to take examinations under regular testing conditions, I am continuing to recommend that [plaintiff] receive double time (2X), 5 minute breaks between sections, and a separate testing room on the LSAT exam.

Dr. Weiner further explained that the accommodations that the LSAC provided to plaintiff in June 2012 and continue to offer him, including 10 minutes of extended time per section, "are not sufficient to meet his needs."

78.     The LSAC without explanation rejected Dr. Weiner's recommendation. By letter dated July 10, 2012, the LSAC refused to grant plaintiff's request for double-time and stated that its decision was based in part on Pretti's recommendation and the accommodations that plaintiff received at EHL. The letter also misidentified Pretti as a doctor.

79.     Plaintiff retained counsel, Jo Anne Simon, P.C. (the "Simon Firm"), to assist him in his request for accommodations. By letter dated August 29, 2012, the Simon Firm summarized the facts and provided legal justification supporting the request for double-time and five minute breaks between each section. Counsel submitted documentation to support the requested accommodations, including a Personal Statement from plaintiff dated August 22, 2012; an LSAC Candidate Form dated August 27, 2012; Dr. Hampson's May 31, 1995 psychological evaluation; Dr. Sperry's October and December 1995 neurological evaluations; and a letter from NYU confirming that plaintiff is entitled to double-time on his examinations.

80.     Plaintiff's Candidate Form requested 100 percent more time on the exam, five minute breaks between sections, and use of a computer for the writing sample section.

81.    Plaintiff explained in his Personal Statement the effect of the ADHD and GAD on his process for completing examination questions:

> When I first see an exam question, I am intimidated and it takes me several minutes to select an approach, and then even more time to read and answer the question. . . .  Multiple choice questions are especially intimidating, and I find myself more easily distracted, and unsure of my answers.  I tend to second guess my answers and go back to the answer choices, even at the expense of my not having enough time to complete the rest of the exam. . . .  When I go into an exam knowing that I will not have enough time to complete all of the questions, I know that I am being set up for failure.  This causes my anxiety to increase and I feel as if my mind is blocked and I become paralyzed.

82.    In addition to the above materials, plaintiff's counsel provided a letter from Pretti, dated August 9, 2012.  Pretti stated in her letter, "I wish to clarify that my recommendation [for at least 1/3 extended time] was based on the practice of providing 1/3 extended time in Switzerland, whose academic practices vary from those of America. . . .  I strongly suggest that [the LSAC] reconsider its decision and defer to the recommendations of Dr. Weiner."

83.    On September 18, 2012, the LSAC again denied plaintiff's request for additional accommodations.  The LSAC disregarded the accommodations that plaintiff was then and is currently receiving at NYU.  In addition, the September 18, 2012 letter contains several incorrect statements, including that plaintiff had never received accommodations until college and that his performance on the June 2012 exam showed that 10 minutes extra time per section was an appropriate accommodation.  The LSAC provided no explanation or analysis to support its conclusion that the accommodations it offered plaintiff for the June 2012 exam were sufficient.

84.     Plaintiff cancelled his registration for the exam in October 2012 because defendant refused to grant him additional accommodations.

85.     Plaintiff reregistered for the exam a fifth time in December 2012. As the LSAC acknowledges, "Many law schools require that the LSAT be taken by December for admission the following fall." Accordingly, the December 2012 exam was plaintiff's last chance to take the test in time for starting law school immediately following college for most law schools. After spending some time preparing for the December 2012 LSAT exam, plaintiff cancelled his registration. He realized again that because of the time limitations, his performance on the LSAT would not accurately reflect his aptitude or achievement level.

86.     In May 2013, plaintiff registered for the October 5, 2013 administration of the LSAT. Plaintiff retained other counsel, Vladeck, Waldman, Elias & Engelhard, P.C. (the "Vladeck Firm"), to help him secure the necessary accommodations. By letter dated May 23, 2013, the Vladeck Firm requested reconsideration of the LSAC's decision to deny plaintiff's request for double-time and five minute breaks between each section. Plaintiff submitted additional support for his requested accommodations, including a letter from his high school guidance counselor confirming that he received testing accommodations during elementary and high school; a letter from an EHL school psychologist stating that it was the policy of EHL to provide 25 percent additional exam time for all students with documented ADHD (ADD, dyslexia, and/or physical impairments); and a letter from Dr. Hampson recommending that plaintiff should continue to receive double-time testing accommodations on all school and standardized tests given the consistency of his findings and those of Dr. Weiner.

87.     By letter dated June 12, 2013, the LSAC denied plaintiff's application for double-time and five minute breaks between each section of the LSAT. The LSAC incorrectly

stated that the "additional documentation submitted with [plaintiff's May 23, 2013 letter] does not warrant a change in the previously granted accommodations, as it essentially restates the information previously provided in support of prior requests for reconsideration."

88.     In addition, despite substantial medical documentation to the contrary, the LSAC asserted that plaintiff failed to present evidence that plaintiff's difficulty taking the June 2012 LSAT was related to a disability.

89.     On June 14, 2013, plaintiff's counsel called LSAC's general counsel to discuss informal resolution of this matter.  Plaintiff's counsel left a message and by letter dated June 17, 2013, the LSAC's general counsel advised plaintiff's counsel that "[g]iven the nature of the accommodations process," the LSAC would only communicate in writing and not by telephone.

E.     All of Plaintiff's Evaluators Currently Recommend Double Extended Time for the LSAT

90.     The LSAC stresses that "[a]ccommodations will be based upon an assessment of the current nature and impact of your impairment."  The LSAC, however, disregards that plaintiff currently receives double-time for all exams at NYU.

91.     In addition, all of plaintiff's qualified clinicians currently recommend double extended time for the LSAT.  In letters provided to the LSAC, plaintiff's evaluators state the following:

a.     As set forth above, by letter dated June 27, 2012, Dr. Weiner stated, "Because [plaintiff's] Generalized Anxiety Disorder and [ADHD] substantially limits him in many major aspects of his life and clearly and unequivocally impairs his ability to take examinations under regular testing conditions, I am continuing to recommend that [plaintiff]

receive double time (2X), 5 minute breaks between sections, and a separate testing room on the LSAT exam."

        b.     By letter dated March 22, 2013, plaintiff's high school guidance counselor stated, "I strongly recommend . . . that [plaintiff] receive 100% extended time as well as breaks in between sections on the LSAT."

        c.     By letter dated April 16, 2013, an EHL school psychologist stated, "As [a] Psychologist at EHL, I would certainly advise that the [LSAC] provide [plaintiff] the accommodations he receives at NYU, where he is currently studying (extended time, separate testing environment, and use of a computer)."

        d.     By letter dated April 24, 2013, Dr. Hampson stated, Dr. Weiner's "current diagnoses correspond almost exactly with those noted nearly 18 years ago.  Given the consistency of these findings, it is important to note the long-standing nature and stability of these conditions.  [Plaintiff] should continue receiving the double-time testing accommodations on all school tests and on standardized admissions tests."

<u>Plaintiff Will Suffer Irreparable Injury If His Requested Accommodations Are Denied</u>

        92.     To appropriately accommodate the condition and manner of plaintiff's limitations, double-extended time and five minute breaks between each section of the exam are necessary.  The 10 extra minutes per section that the LSAC has offered has not, and will not, adequately accommodate plaintiff's disabilities.  Without double-time and five minute breaks between each section, plaintiff will not have an opportunity to demonstrate his full and actual knowledge, skills and abilities on the LSAT, therefore prejudicing his admission to law school.

        93.     The LSAC concedes that plaintiff has a disability, which substantially limits his major life activities.  These activities include cognitive thinking, reading, and

processing written material at the same rate as most people. Under the ADA, the Executive Law, and the City Law, plaintiff is entitled to the accommodation of double extended time, five minute breaks between sections, and a separate testing room for the LSAT, as demonstrated by his medical records and his inability to timely complete the LSAT.

94.     Plaintiff requires double extended time on the LSAT not to gain an advantage, but to attempt to level the playing field because his functional limitations affect his ability to take a strictly timed standardized examination that non-disabled test takers do not experience.

95.     The LSAC has denied plaintiff's requested accommodations for two years since the spring 2011. During this period, he has registered for the exam five times (not including his most recent registration for the October 2013 exam). For each LSAT administration that he registered, plaintiff spent substantial time preparing.

96.     Plaintiff enrolled in an LSAT preparatory course, arranged for private tutoring, and spent numerous hours studying by himself and taking practice exams. Because the LSAC refused to grant plaintiff's requested reasonable accommodations, plaintiff has taken the test on just one occasion and was forced to cancel that score.

97.     Plaintiff started preparing for the LSAT in 2011 because he intended to start law school immediately following college. Plaintiff expects to satisfy his NYU graduation requirements by July 2013 and, but for the LSAC's discrimination, plaintiff would otherwise be eligible for law school by the fall 2013. He has not applied to law school, however, because the LSAC has failed to offer the LSAT in an accessible manner in violation of the ADA, the Executive Law, and the City Law.

98.     If the LSAC does not provide the requested reasonable accommodations for the LSAT, plaintiff will be unable to demonstrate his actual knowledge, skills, and potential to succeed on the LSAT and our society could be deprived of the valuable contributions plaintiff could make.

99.     Plaintiff will be irreparably harmed if the LSAC is allowed to continue its unlawful discrimination against him and prevent him from accessing the LSAT on equal footing with his non-disabled peers.  If he does not take the October 5, 2013 LSAT with double-time accommodations for all sections, five minute breaks between sections, and a separate testing room, he will forever lose the extensive time he has invested in preparation for the LSAT and will be unreasonably delayed or prevented from taking the LSAT, applying to law school, and entering the legal profession, because of his disabilities.

100.    The accommodations that plaintiff has requested are the type of accommodations, including double-time, that the LSAC has granted to other test takers with disabilities in prior administrations of the LSAT and would not fundamentally alter the test.  On information and belief, some of the individuals who the LSAC has granted double extended time never received that accommodation before taking the LSAT.  In contrast, plaintiff has received academic accommodations since the second grade and currently receives such accommodations, including 100 percent extra testing time, at NYU.

101.    Plaintiff has notified the LSAC of its violation of the ADA, the Executive Law, and the City Law, and requested that defendant remedy this matter by providing the requested accommodations.  Plaintiff has also advised the LSAC of his intention to file this litigation if the matter is not remedied.

FIRST CAUSE OF ACTION
(ADA)

102.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 101 of this Complaint as if set forth fully herein.

103.    Plaintiff has had, at all relevant times, a "disability" as that term is defined in the ADA.

104.    The LSAC is a private entity that offers examinations related to applications to post secondary education, and therefore is subject to the non-discrimination and reasonable accommodation requirements of the ADA.

105.    Among other obligations, the ADA requires the LSAC to offer the LSAT examinations in a manner accessible to a person with disabilities.  The Department of Justice implementing regulations prohibit the LSAC from administering the LSAT without ensuring that the scores it reports "accurately reflect the individual's aptitude or achievement level or whatever other factor the test purports to measure rather than reflecting the applicant's [disability]."  28 C.F.R. § 36.309(b)(1)(i).

106.    The Department of Justice "Guidance On Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities" provides, inter alia, "[R]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment."  Appendix A to 28 C.F.R. Part 36.

107.    Plaintiff is a qualified individual within the meaning of the ADA.  He meets all eligibility criteria for taking the LSAT.

108.   Due to his disabilities, plaintiff requires certain reasonable accommodations to have an equal opportunity to demonstrate his aptitude and achievement level on the LSAT.

109.   Defendant has discriminated and continues to discriminate against plaintiff on the basis of his disability by denying him an equal opportunity to demonstrate his aptitude and achievement level on the LSAT, in violation of the ADA.

110.   The LSAC has violated plaintiff's rights under the ADA, including, but not limited to, by the following acts and practices:

a.   the failure to timely grant accommodations when plaintiff submitted the requisite documentation consistent with the LSAC's guidelines;

b.   the failure to give considerable weight to plaintiff's evaluators;

c.   the failure to provide a clear explanation for LSAC's denial of plaintiff's requested reasonable accommodations;

d.   the failure to have plaintiff's documentation supporting his request for accommodations reviewed by a competent independent evaluator;

e.   the failure to provide any written report from any person who evaluated plaintiff's documentation and rendered an opinion; and

f.   the failure to engage in good faith in the interactive process to consider and implement effective reasonable accommodations for plaintiff's disabilities.

111.   The LSAC's conduct constitutes an ongoing and continuous violation of the ADA that will continue to injure plaintiff unless the requested injunctive relief is granted.

112.   The balancing of harm favors granting plaintiff's request for an injunction. The LSAC will not be harmed in any manner if the requested injunctive relief is granted.   The

testing modifications that plaintiff needs would not impose a fundamental alteration on the exam or create an undue burden on the LSAC.

113.   The public interest will be served by granting the requested injunctive relief because, consistent with the intent of the ADA, plaintiff will have a fair opportunity to demonstrate his knowledge and abilities on the LSAT in the same manner as individuals without disabilities.

114.   Plaintiff has no adequate remedy at law.

115.   Plaintiff has suffered and will continue to suffer irreparable injury as a result of defendant's discriminatory practices and unless injunctive relief is granted prohibiting the continued violation of plaintiff's ADA rights and compelling LSAC to provide the requested accommodations. Plaintiff has suffered and will suffer substantial injury, including, but not limited to, lost time in preparation for the examination, lost employment opportunities, lost educational opportunities, out-of-pocket pecuniary losses, and emotional distress and anguish.

## SECOND CAUSE OF ACTION
### (DECLARATORY RELIEF)

116.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 115 of this Complaint as if set forth fully herein.

117.   A present and actual controversy exists between plaintiff and the LSAC concerning their rights and respective duties.  Plaintiff contends that the LSAC violated and continues to violate his rights under the ADA.  On information and belief, defendant LSAC denies these allegations, thus declaratory relief is necessary and appropriate.

## THIRD CAUSE OF ACTION
### (EXECUTIVE LAW)

118.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 117 of this Complaint as if set forth fully herein.

119.   Plaintiff has had, at all relevant times, a "disability" as that term is defined in the Executive Law.

120.   Defendant is a place or provider of public accommodation within the meaning of the Executive Law.

121.   By the acts and practices described above, defendant has discriminated against plaintiff on the basis of his disability, in violation of the Executive Law.

122.   Plaintiff has suffered and will continue to suffer irreparable injury as a result of defendant's discriminatory practices.

## FOURTH CAUSE OF ACTION
### (CITY LAW)

123.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 122 of this Complaint as if set forth fully herein.

124.   Plaintiff has had, at all relevant times, a "disability" as that term is defined in the City Law.

125.   Defendant is a place or provider of public accommodation within the meaning of the City Law.

126.   By the acts and practices described above, defendant has discriminated against plaintiff on the basis of his disability, in violation of the City Law.

127.   Plaintiff has suffered and will continue to suffer irreparable injury as a result of defendant's discriminatory practices.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

a.      enjoining and permanently restraining these violations of the ADA, the Executive Law, and the City Law, including by directing LSAC to immediately cease and desist from its refusal to accommodate plaintiff's request for accommodations on the October 5, 2013 LSAT and any future LSAC administration for which plaintiff is otherwise entitled to take pursuant to the LSAC's policies and procedures;

b.      directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff, including (1) ordering the LSAC, or those acting as agents for or in concert with defendant, to provide test accommodations to plaintiff for the October 5, 2013 LSAT administration, including 100 percent extended time on all sections of the exam, five minute breaks between each section, and a separate testing room for the LSAT; (2) ordering the LSAC to certify plaintiff's score on the October 5, 2013 exam after plaintiff takes the exam with the above accommodations; and (3) making this order permanent such that it will be applicable to all future LSAC examinations that plaintiff takes;

c.      declaring that the acts and practices complained of herein are in violation of the ADA, the Executive Law, and the City Law;

d.      awarding plaintiff his reasonable attorneys' fees and costs; and

e.       granting such other and further relief as the Court deems necessary and

proper.

Dated: New York, New York
       July 3, 2013

                                        VLADECK, WALDMAN, ELIAS &
                                        ENGELHARD, P.C.


                         By:    _____
                                        Anne C. Vladeck
                                        Jeremiah Iadevaia
                                        Attorneys for Plaintiff
                                        1501 Broadway, Suite 800
                                        New York, New York 10036
                                        (212) 403-7300